**Amin Abdus SALAAM, also known as James Waddell, Plaintiff–Appellant,**

v.

**CORRECTIONS CORPORATION OF AMERICA, et al., Defendants–Appellees.**

No. 00–4612.

United States Court of Appeals, Sixth Circuit.

Aug. 7, 2001.

Before CLAY and GILMAN, Circuit Judges; WISEMAN, District Judge.*

Amin Abdus Salaam, also known as James Waddell, a District of Columbia prisoner, moves for the appointment of counsel and appeals the summary judgment for defendants in a civil rights action filed under 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Salaam was incarcerated at the Northeast Ohio Correctional Center from 1997 to 1999. He filed this complaint against the Corrections Corporation of America, which runs that facility, several of its employees, and the food service contractor, alleging infringement of his right to practice his religion, Islam. Specifically, Salaam complained that for nine months, facility-wide congregational services were not permitted; he was given a vegetarian diet to satisfy his religious requirements although he could also eat fish; he was made to shower in front of female staff; and the defendants failed to recognize his name change.

The parties agreed to present this case to a magistrate judge. Defendants filed a motion for summary judgment, arguing that this complaint was barred because Salaam was a member of a class action over conditions at the prison which had recently been settled, and that his right to practice his religion had not been infringed. Salaam filed a response. The magistrate judge rejected defendants' argument

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

that the complaint was barred by the class action settlement, which did not involve religion issues, but agreed that Salaam's right to practice his religion had not been violated, and granted summary judgment to defendants. On appeal, Salaam reasserts his claims concerning a facility-wide congregational service, the religious diet, and the shower facilities. He also argues that the magistrate judge should have granted his motion for the appointment of counsel.

Upon review, we conclude that the summary judgment for defendants must be affirmed, as there is no genuine issue of material fact, and they are entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■■■ A prison regulation impinging on an inmate's exercise of religion is valid if it is reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Salaam's first claim, that facility-wide congregational services were suspended for nine months, is similar to the claim raised and rejected by the Supreme Court in *O'Lone.* Salaam argued that his religion required a joint prayer service for the entire facility each Friday. For nine months in 1998, the prisoners were being reclassified and high security prisoners were being separated and transferred. During that period, the Friday prayer services were held on each wing of the facility separately in order to avoid the mingling of prisoners of different security levels. This regulation is clearly related to the legitimate interest of avoiding violence. Other factors to be considered in deciding whether a regulation of a religious practice is valid include whether alternative means of exercising religious rights exist and what impact accomodating

the religious requests would have. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Here, prayer services were held on each wing of the facility, and violent confrontations between inmates were avoided. These facts are distinguishable from those in *Whitney v. Brown*, 882 F.2d 1068, 1074–78 (6th Cir. 1989), to which Salaam cites, where the court found that the movement of six inmates would not add a significant burden to the frequent inter-complex travel identified in that case. Here, Salaam points to a graduation ceremony for GED students of all security levels which was held during the nine-month period at issue. The security concerns raised by this one-time event are not comparable to allowing weekly meetings of numerous inmates. Therefore, the magistrate judge correctly concluded that the temporary suspension of facility-wide services was justified.

■■■ Salaam's second complaint concerned his diet. He was offered a vegetarian diet to satisfy his religious concerns, which provided eggs, cheese, peanut butter and beans as sources of protein. Salaam complained that he could also eat fish within his religious rules, which was not part of the diet available. The chaplain submitted an affidavit stating that some Muslims will eat other non-pork meats without requiring that they be slaughtered and prepared in accordance with Islamic rules, and that there was a no pork diet available. The magistrate judge concluded that Salaam's preference to eat only fish and an otherwise vegetarian diet was not a fundamental tenet of his religion, and therefore not protected by the Constitution. *See Abdur–Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir.1995). Salaam takes issue with this decision on appeal, arguing that the magistrate judge erroneously adopted the chaplain's definition of Islam over his own. We conclude that,

even if Salaam's diet preference is assumed to be a fundamental tenet of his religion, the provision of a vegetarian diet was a reasonable accommodation. The avoidance of tailoring each prisoner's diet to his liking is a legitimate interest. *See O'Lone*, 482 U.S. at 351–52, 107 S.Ct. 2400. Most importantly, the vegetarian diet provided fully complied with the requirements of Salaam's religion. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254.

Finally, Salaam complained because he was required to shower in view of female staff, which violated his religious beliefs. The showers were located in the central area of the cell blocks, surrounded by four-foot high walls. Therefore, the view into the showers from the adjacent stairs and the walkway around the upper tier of cells was unimpeded. Defendants argued that this configuration was a necessary security precaution. They also noted that Salaam was permitted to wear shorts or a towel in the shower if he preferred. Again, because security is a legitimate interest and Salaam was not restricted from alternate methods of following his religious scruples, the design of the shower area did not violate his right to practice his religion. *See O'Lone*, 482 U.S. at 351–52, 107 S.Ct. 2400; *Turner*, 482 U.S. at 89, 107 S.Ct. 2254.

Salaam has abandoned his claim regarding his name change on appeal, and we therefore need not consider it. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir.1991). The final claim Salaam raises on appeal is that the magistrate judge should have granted his motion for the appointment of counsel. Because this is not a complex case, and Salaam was able to present his claims, no error is apparent. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir.1993).

For all of the above reasons, the motion for counsel is denied and the summary judgment for defendants is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.